## SUPREME COURT.

KASSON, appellant, agt. MILLS, respondent.

The County Court, on appeal from a judgment of a Justices' Court, have no authority to review the *evidence* given in the Justices' Court, and to reverse, affirm or modify the judgment on questions of *fact* arising from such evidence. (*This agrees with Adsit agt. Wilson,* 7 *How. Pr. R.,* 68.)

Nor can the County Court, under section 366 of the Code, reverse in part, and affirm in part, a judgment of a Justices' Court, rendered for *entire damages*. If there is no evidence to support the judgment it must be reversed, if there is evidence upon both sides—a mere conflict of evidence, the judgment must be affirmed.

Where the *acts* of a *clerk* or *agent* will bind his principal, his *representations*, *declarations* and *admissions*, respecting the subject matter, will also bind him, if made at the same time—and are competent evidence.

*Erie General Term, November*, 1852. Appeal from the judgment of the Erie County Court, reversing in part, and affirming in part, the judgment of the Justices' Court.

The action was to recover for the transportation o oysters and fruit from Albany to Buffalo, by " Kasson's despatch," delivered in Buffalo, September 14th, 16th and 17th, 1850. The defence was that the plaintiff had never been employed to transport the articles. Further facts will appear in the opinion. The jury found a verdict for the plaintiff, for $100, and the

County Court affirmed the judgment for $3,36, and reversed it for the residue, and the plaintiff appealed to this court.

I. T. WILLIAMS, *for Appellant.*

B. F. GREEN, *for Respondent.*

By the Court—MARVIN, Justice.—The County Court has reviewed the evidence and assumed to correct the verdict of the jury as to the amount. (The evidence will appear more fully hereafter.) If the County Court can thus reform the verdict, upon the evidence in this case, it will be difficult to find a case in which he may not do so. The County Court is directed, upon appeal, to "give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits. In giving judgment the court may affirm or reverse the judgment of the court below, in whole or in part, and as to any or all the parties, and for error of law or fact." (*Code,* § 366.) Does this section authorize the County Court to review the evidence before the justice, and if, in the opinion of the court, the verdict is too large, to reduce it? Previous to the Code it was settled that a judgment for an entire thing could not be reversed in part and affirmed in part; that if the judgment was for *distinct* things, for instance, for damages and for costs, it might be reversed for the one and affirmed for the other. See Sheldon agt. Quimbee, (5 *Hill,* 441, *and cases cited.*) Has the Code changed the law upon the point we are now considering? By the 2d Revised Statutes, section 181, the court was directed to give judgment in the cause as the right of the matter may appear, without regarding technical omissions, imperfections, or defects in the proceedings before the justice, which did not affect the merits, and may affirm or reverse the judgment in whole or in part. It was never claimed under this or previous similar provisions, that an entire judgment as for damages, could be reversed in part and affirmed in part. If there was no evidence to support the judgment it was reversed; if there was evidence upon both sides—a mere conflict of evidence, the judgment was affirmed. See Stryker agt. Bergen, (15 *W.,*

490;) Noyes agt. Hewitt, (18 *W.* 141.) Sheldon agt. Quimbee, was under a statute containing the language substantially referred to in the Revised Statutes, and in addition, that the court may "give such judgment for either party as the very right of the matter may seem to require," it was held that this did not change the general rule. See also Richards agt. Walton, (12 *J. R.*, 434;) Arnold agt. Sanford, (14 *J. R.*, 422, 425; *Gra. Pr.* 959, *&c.*,) In Sheldon agt. Quimbee the action was trover, against two defendants, and the Superior Court reversed the judgment as to one of the defendants, and affirmed it as to the other, and the Supreme Court held that this was error. There the language of the statute was, the court may "give judgment for *either* party, as the very right of the matter may seem to require." It was held that the word "party" meant all the plaintiffs or defendants. It will be noticed that the language of the Code is quite different. The court may affirm or reverse in whole or in part, "and as to any or all the parties." I have no doubt the County Court may now reverse as to some of the defendants, and affirm as to others, and so as to plaintiffs. This power is necessary in order to carry into effect the system of the Code. (*Sec.* 332, 74 *and* 136.) But this does not affect the authority of the cases referred to, upon the general rule, or the question now under consideration.

The Code, however, contains the additional words " and for errors of law and *fact*." And it has been supposed that this confers upon the County Court the authority to review all the evidence and to remodel the verdict in accordance with the views of such court, and I suppose the County Court, in this case, proceeded upon this ground. This is an erroneous view of this provision of the Code. *Errors of fact*, as here used, have no reference to an erroneous finding of the court or jury upon the evidence, but it refers to those errors of fact not appearing from the record or evidence, such as the infancy, coverture, &c., of some of the parties, who have not properly appeared.

This clearly appears from the amendment of the section in 1851, by adding thereto the directions for determining the

alleged errors of fact on affidavit or upon examination of witnesses. See this question ably discussed in Adsit agt. Wilson, (7 *Pr. R.*, 68.)

The County Court erred in reversing the judgment in part and affirming it in part, as to the entire damages. What judgment ought this court to give? The appellate court may reverse, affirm, or modify the judgment appealed from. (§ 330.)

We must reverse the judgment of the County Court, and in case no errors were committed in the Justices' Court, affirm the judgment of the justice. But suppose we find errors committed in the Justices' Court, are we to reverse it upon this appeal? The defendant has not appealed, as he might, from the judgment of the County Court. He appears content with that, and pursues his appeal no further. It has been suggested that, as the defendant has not pursued his appeal to this court, we should not look for errors in the Justices' Court, but should affirm the judgment; that if we reverse the judgment of the justice, upon this appeal of the plaintiff, it will present the anomaly of a plaintiff, causing by his appeal, a reversal of a judgment in his favor, with which he is entirely satisfied, and which he desires to sustain.

Having come to the conclusion that there was no error in the justice's judgment, it is not necessary to pursue these questions.

The plaintiff proved the delivery, on the 14th, 16th and 17th September, of oysters and fruit, the charges on which amounted to $102,70—these charges were higher than *railroad charges*. It was proved that Mills, a brother of the defendant, was his clerk, and that he was in the habit of calling at the plaintiff's place of business, and enquiring if any goods—any oysters and fruit had been received, and that on such occasions he told the clerk of the plaintiff, as soon as they came, to have them sent to the plaintiff's store, and the witness states he always sent them. The evidence of the declarations of the clerk were objected to, and the objection was overruled.

It was also proved by a witness that he carted fruits and oysters from Kasson's to defendant's store, that the clerk, Mills,

was at the store and directed where they should be put. That he told the clerk they were from Kasson's despatch, that the clerk said it was all right, and directed him to unload them, and paid him. The declarations of the witness to the clerk, that the goods were from Kasson's despatch, and the declarations of the clerk, that it was all right, were objected to. It seems to me that this evidence was not objectionable; Mills was a clerk in the store or shop of the defendant, it was a part of his business to receive and take care of the goods, and I think it a presumption which the jury had a right to draw from the evidence, establishing the relation between the clerk and the defendant—that he was discharging the duties of such clerk, and in the employ of the defendant when he called at the plaintiff's depot and enquired for goods, and when he directed that upon their arrival they should be sent to the defendant's store. The same may be said of him at the time the carman delivered goods at the store. In this view, I think, his acts and declarations were competent evidence. Whatever the agent does, in the lawful prosecution of the business of the principal, is to be regarded the act of the principal whom he represents. And when the acts of the agent will bind the principal, then his representations, declarations, and admissions, respecting the subject matter, will also bind him, if made at the same time, constituting a part of the *res gesta*. (1 *Greenl. Ev.* § 113; *Story Ag.* § 134, 135; 4 *W.* 397.)

If the defendant had called personally at the depot, and had done and said what the clerk did and said, it would have been evidence tending to show a right, on the part of the plaintiff, to carry the goods from Albany to Buffalo, and so as to what occurred at the store, when goods were received as coming from the plaintiff. The same effect must be given to the acts and declarations of the clerk, provided he was acting at the time, as the agent of the defendant; and I think the evidence was such as to justify the jury in so finding. The clerk, Mills, was present in court, and was not called by the defendant as to his agency or authority.

The defendant gave evidence tending pretty strongly to show that the plaintiff was not employed to transport the goods. It also appeared that the parties had an interview.   The goods were shipped in New York, and the evidence tended to show that neither the plaintiff or defendant knew whether it was right that the plaintiff should receive them at Albany and convey them to Buffalo, and they were to enquire into the matter and if it turned out that they were not to be carried by the plaintiff he was only to charge railroad prices.   After this the charges were paid as the goods were delivered.   The whole amount as per railroad prices would have been some $290, and the defendant paid in all about $287.   He claims that, at any rate, he was only bound to pay railroad prices. Nothing had been paid, however, specially, on account of the particular goods delivered on 14th, 16th and 17th September, to recover the freight and charges on which this action was brought.   The answer to the position of the defendant is that there was evidence upon both sides, and the jury have found the facts against him, and the evidence is sufficient to uphold their finding, and we ought not to disturb it.   The County Court considered the evidence and came to a different conclusion and diminished the damages.   In this the County Court erred, and its judgment must be reversed, and the judgment of the justice affirmed.